

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–15–261

| | |
|---|---|
| MICHAEL CREWS and APRIL JO CREWS <br><br> APPELLANTS <br><br> V. <br><br><br> STATE OF ARKANSAS <br> APPELLEE | **Opinion Delivered** November 4, 2015 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. CR–2013-3925] <br><br> HONORABLE BARRY SIMS, JUDGE <br><br> AFFIRMED |

## CLIFF HOOFMAN, Judge

Michael and April Crews appeal after they were convicted and sentenced by the Pulaski County Circuit Court after a bench trial. Mr. Crews was convicted of residential burglary, possession of a controlled substance, schedule VI, and fleeing and was sentenced to serve a total of 60 months' imprisonment in the Arkansas Department of Correction. Ms. Crews was convicted of residential burglary and was placed on 60 months' probation. Additionally, appellants were ordered to pay $11,660.90 in restitution. On appeal, appellants contend that (1) the trial court cannot force a defendant to choose between imprisonment and the right to a full and fair hearing on restitution, (2) there are no economic damages for the crime of conviction and no evidence that appellants are responsible for any loss, and (3) no evidence of economic damages was submitted during any evidentiary hearing. We affirm.

Mr. Crews was charged by felony information on December 4, 2013, with residential burglary, possession of a controlled substance, schedule VI, and fleeing. Ms. Crews was

charged by felony information on the same date with residential burglary. Appellants waived their right to a jury trial, and a joint bench trial was held on October 20, 2014.

Dale Eslick testified that he observed a trailer driving into his neighbor's driveway around two o'clock in the afternoon on October 16, 2013, and that he immediately called the police. Detective Dennis Swinford and Deputy Thomas Stevens testified that they responded to Eslick's call. Detective Swinford explained that he observed Mr. Crews inside the home, and Mr. Crews ran out the back of the home, despite Detective Swinford ordering him to stop. After Mr. Crews slipped and fell, Detective Swinford took him into custody and found a plastic bag containing what appeared to be marijuana on him, which was later confirmed by a chemist with the Arkansas State Crime Lab to, in fact, be marijuana. Detective Swinford also testified that there were bolt cutters and a pry bar inside the home and that it looked like the front door had been pried open. The copper inside the home had been cut, and it appeared that other items had been moved, although the trailer was completely empty.

Deputy Stevens testified that he observed a flashlight moving around in the home as they approached. In addition to assisting Detective Swinford in detaining Mr. Crews, he indicated that he ordered Ms. Crews to get on the ground. After she complied, he took her into custody. He further explained that he had observed that there were pry marks on the front door, that bolt cutters and a pry bar were left on the kitchen counter, and that electrical wires had been cut.

Shula May testified that he owned the home, but he and his wife did not live there anymore. However, the utilities were kept on, and they would occasionally stay in the home

2

before their doctors' appointments, as the home was closer to their doctors' offices. When he was notified by police the day of the residential burglary, his stepdaughter went immediately to the home. After he arrived later, he noticed that a lot of things were missing and that items were dumped and thrown on the floor. He explained that the house was no longer in a livable condition because wires, copper, plumbing, and an air conditioner were taken or damaged.

Linda Self, Mr. May's stepdaughter, testified that she checked on the home regularly and responded after the burglary. She explained that the last time she had been in the home was approximately two weeks prior to the burglary, and no one had permission to be in the residence. She testified that there were items of furniture and children's toys on the driveway that had previously been in the home. She further explained that furniture was out of place; the door, window, and oven were broken; furniture and toys were missing; and the home was in disarray.

After the State rested, appellants reserved their directed-verdict motion until the close of all evidence. Mr. and Ms. Crews testified on their own behalf. Ms. Crews testified that they had permission to be in the home and maintained that they arrived at the home in order to clean it. Ms. Crews had a note in her purse on the night of the incident, and she testified that Joseph Taylor had signed it to give them permission to be in the home. Mr. Crews testified that he ran from the police because he knew that he had marijuana in his possession.

Appellants also introduced the testimony of William Darling and Danny Edwards. Both witnesses testified that they saw Joseph Taylor hand appellants a piece of paper prior to

3

the burglary. The note that was found in Ms. Crews's purse at the time of the burglary was later admitted into evidence. However, Mr. Taylor did not testify, nor was any testimony introduced that Mr. Taylor had any authority to give appellants permission to be in the home. At the conclusion of the trial, defense counsel argued that the evidence supported a reasonable alternative for appellants' presence at the home and requested the court to find appellants not guilty. However, the trial court found both appellants guilty of their respective charges.

A sentencing hearing was held on November 13, 2014. Ms. Self testified at the hearing and explained that her parents did not have any money to repair the damage caused to the home. She also voiced her concern that her parents did not have a home to use for medical visits because of appellants' actions. Mr. and Ms. Crews again denied taking anything or damaging the home. The trial court orally announced that it was sentencing Ms. Crews to six years' probation in addition to ordering her to pay fines and costs, perform community service, and submit to random drug screens. After the trial court asked whether any restitution had been submitted, the State offered the restitution-assessment form that had been submitted by the victim. Defense counsel objected, and the following colloquy took place:

[DEFENSE]: Your Honor, A, there's a couple of things here. There is absolutely no testimony that links any of the stolen pipes, things of that nature to Mr. and Mrs. Crews. The entire testimony shows that they had just pulled up to the house within, you know, a very short period of time. And there was nothing on their trailer that was stolen.

Second -- just from an evidentiary point of view -- secondly, I've not seen any of this. I've not had a chance to go over it. I don't know that it's appropriate to introduce it at this time.

[STATE]: Your Honor, I've discussed restitution with Mr. Lane before. I believe I provided you this -- this set up of restitution assessment information.

I've had this in my docket, I mean, my file for a long time.

Your Honor, while defense counsel may argue what he may, testimony at the bench at trial that there was a large degree of damage to the home. The front door had been broken into, copper wiring had been pulled, et cetera.

And the testimony by one of the witnesses was that there had been multiple break-ins in the neighborhood at the time. This victim and her parents had not been in the house for over a week.

They were caught redhanded within the home. There were things ready to be loaded onto the trailer. There was a trailer there. The house had been pushed open. There was a crowbar and wire cutters and bolt cutters laying in the counter top right near the front door.

And the evidence does support that these two defendants did have something to do with the large and vast degree of damage to the home. And so for that, we ask that if the court is considering restitution that some amount of restitution be made.

And based on the sentencing testimony by Ms. Self that would be greatly valued by the family because of right now they can't use that house.

[COURT]:   Well, the only reason I'm putting her on probation is so she can pay a restitution. Otherwise, I will just put her in the pen. That's where I am on that, I mean. So we if you want to mark and let me see it over Mr. Lane's objection. If we need to have a hearing on restitution, I will.

[THEREUPON, State's Exhibit Number A, having been marked previously for identification, was received into evidence.]

[DEFENSE]:   Your Honor, if that's the court's position then we will -- she will pay the restitution rather than go to the penitentiary, sir.

[COURT]:   Okay. $11,660.90 restitution at 200 a month beginning 12/13/14, DNA.

After the sentencing hearing concluded for both appellants, the trial court filed written

sentencing orders and ordered appellants to pay $11,660.90 in restitution in addition to their

5

respective sentences.   This appeal followed.

Appellants first contend that the trial court violated their right to due process when it "compelled [them] to waive their right to a fair determination of restitution in order to secure [Ms. Crews's] sentence of probation."   The State is correct in this case when it argues that appellants' due-process arguments are not preserved for appellate review.   Appellants never objected or raised a due-process argument below, and even constitutional arguments must be raised to the trial court in order to be preserved for appellate review.   *Ingram v. State*, 2009 Ark. App. 729, 363 S.W.3d 6.   Therefore, this court is precluded from addressing appellants' first point on appeal.

In their second point on appeal, appellants appear to challenge the sufficiency of the evidence of their convictions for residential burglary when they argue that "there [was] insufficient evidence to show that [they] caused the damages for which the restitution was ordered." However, in their reply brief, appellants concede that a reasonable fact-finder could conclude that they committed residential burglary and state that they are only challenging the order of restitution on appeal.

Appellants lastly contend that the trial court erred in ordering them to pay restitution. More specifically, they argue that the offense of residential burglary did not support a restitution order.   Additionally, they argue that the trial court failed to hold a restitution hearing, that the trial court did not hear any specific testimony regarding the actual economic loss sustained by the victim, and that the trial court erred in finding that a preponderance of the evidence supported an order of restitution.   However, the State argues that the appellants'

arguments are not preserved on appeal. Appellants disagree with the State's contention in their reply brief, but they contend that the order of restitution constitutes an illegal sentence and that this court may consider their arguments despite the absence of an appropriate objection to the trial court.

Arkansas Code Annotated section 5-4-205(a)(1) (Repl. 2013) allows the trial court to order a defendant who is found guilty or who enters a plea of guilty or nolo contendere to an offense to pay restitution. Although the amount of restitution is to be determined "by the preponderance of the evidence presented to the sentencing authority during the sentencing phase of the trial," the amount may also be decided by agreement between the defendant and the victim represented by the prosecuting attorney. Ark. Code Ann. § 5-4-205(a)(4)(A)–(B).

Although appellants may have initially objected to a restitution order and the State's introduction of the restitution-assessment form, they subsequently waived their objections when they agreed to pay the restitution, despite the trial court specifically stating that it would hold a restitution hearing if needed. A contemporaneous objection is generally required to preserve an issue on appeal, and we have held that questions concerning restitution are subject to the contemporaneous-objection rule. *Barnes v. State*, 2011 Ark. App. 42; *Johnson v. State*, 2010 Ark. App. 626. Additionally, we have previously held that the power to sentence a defendant to make restitution is clearly prescribed by law, and therefore, a restitution order is not illegal on its face. *Cotnam v. State*, 36 Ark. App. 109, 819 S.W.2d 291. Thus, appellants' arguments regarding restitution are not preserved for appeal, and we affirm.

Affirmed.

VIRDEN and KINARD, JJ., agree.

*The Lane Firm*, by: *Jonathan T. Lane*, for appellants.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.